

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00047-CV

Kristine Diane **BETHKE**, Individually and as Representative of the Estate of Ian James Bethke, and Jackie Sides,
Appellants

v.

Isabel **MUNOZ** Jr. and Peanut Bar Cattle Co.,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-07562
Honorable Martha Tanner, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  December 19, 2012

AFFIRMED

The issue presented in this case is whether the driver of a tractor-trailer (and his employer) who was involved in an accident can be held liable for a second accident that occurred almost four hours after the first accident and a little over 2 miles from the location of the first accident. Because we conclude, as a matter of law, that the driver's conduct was too remotely connected to the second accident to constitute legal causation, we affirm the trial court's judgment.

## BACKGROUND

Around 7:00 p.m., Isabel Munoz, Jr. was driving a tractor-trailer owned by his employer, Peanut Bar Cattle Company ("Company"), when he drifted off the highway, overcorrected, and then overturned the tractor-trailer. Munoz was talking on his cell phone at the time he drifted off the highway. The Texas Department of Public Safety arrived at the scene of the accident at 7:37 p.m. The tractor-trailer was carrying cattle which complicated the ability to quickly clear the accident.

At the location of the accident, the highway was divided, with the two westbound lanes separated from the two eastbound lanes by a center median. The two westbound lanes of traffic were closed while the officers worked to clear the accident, and traffic backed up for over two miles from the accident scene, tying up between 302 and 970 vehicles.

At 10:55 p.m., Ian James Bethke rear-ended a second tractor-trailer which was the last vehicle in the line of traffic that was stopped. The record contains no evidence that any other collision occurred in the two-mile chain of vehicles. Bethke died as a result of the collision, and Bethke's widow and mother filed a wrongful death and survivor lawsuit, alleging Munoz and the Company were liable because Munoz's negligence caused the second accident resulting in Bethke's death.

Bethke's widow and mother moved for a partial summary judgment as to liability. Munoz and the Company responded and filed a competing traditional and no-evidence motion for summary judgment. The trial court granted the motion filed by Munoz and the Company.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the respondent, indulging all reasonable

inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). In reviewing the granting of a no-evidence summary judgment, we apply the same legal sufficiency standard as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* at 751. "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In such a case, "we render the judgment that the trial court should have rendered." *Id.*

## CAUSATION

"Negligence requires a showing of proximate cause." *Union Pump Co. v. Albritton*, 898 S.W.2d 773, 775 (Tex. 1995). "Proximate cause is generally a question of fact for jury determination, but may, under limited circumstances, be a question of law where the evidence is without material dispute and only one reasonable inference may be drawn therefrom." *Rodriguez v. Moerbe*, 963 S.W.2d 808, 818-19 (Tex. App.—San Antonio 1998, pet. denied) (internal citations omitted). "It may also be a question of law when the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 265, 266 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

One of the elements of proximate cause is cause in fact. *Union Pump Co.*, 898 S.W.2d at 775. Cause in fact requires a showing that the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. *Id.* "At some point in the causal chain, the defendant's

- 3 -

conduct [] may be too remotely connected with the plaintiff's injury to constitute legal causation." *Id*. "'[The] law does not hold one legally responsible for the remote results of his wrongful acts and therefore a line must be drawn between immediate and remote causes.'" *Id*. (quoting *Springall v. Fredericksburg Hosp. & Clinic*, 225 S.W.2d 232, 235 (Tex. Civ. App.—San Antonio 1949, no writ)). "'The doctrine of 'proximate cause' is employed to determine and fix this line.'" *Id*. "Legal cause is not established if the defendant's conduct [] does no more than furnish the condition that makes the plaintiff's injury possible." *Id*. at 776.

In *Union Pump Co.*, the Texas Supreme Court asserted that it had considered the parameters of legal causation in *Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968). The court explained:

> In *Bell*, two cars collided, and a trailer attached to one of them disengaged and overturned into the opposite lane. A number of people gathered, and three of them were attempting to move the trailer when they were struck by another vehicle. This Court held that the parties to the first accident were not a proximate cause of the plaintiffs' injuries, reasoning: "All acts and omissions charged against respondents had run their course and were complete. Their negligence did not actively contribute in any way to the injuries involved in this suit. It simply created a condition which attracted [the plaintiffs] to the scene, where they were injured by a third party."
>
> In *Bell*, this Court examined at some length decisions dealing with intervening causes and decisions dealing with concurring causes. The principles underlying the various legal theories of causation overlap in many respects, but they are not coextensive. While in *Bell*, this Court held "the injuries involved in this suit were not proximately caused by any negligence of [defendants] but by an independent and intervening agency," we also held "[a]ll forces involved in or generated by the first collision had come to rest, and no one was in any real or apparent danger therefrom[,]" and accordingly, that the "[defendants'] negligence was not a concurring cause of [the plaintiffs'] injuries."

898 S.W.2d at 776 (internal citations omitted). Just like the three individuals in *Bell* were trying to remove a trailer left in the road as a result of the earlier collision when they were hit, the second collision in the instant case occurred while troopers were engaged in removing Munoz's tractor-trailer from the road. The second collision in the instant case occurred even more

remotely in time and location than in *Bell*. Here, as in *Bell*, we conclude that the "forces involved in or generated by the first collision had come to rest…."

In *IHS Cedars Treatment Ctr. of DeSoto Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004), the Texas Supreme Court again reiterated that "cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes injuries possible." As the court further noted, "the conduct of the defendant may be too attenuated from the resulting injuries to be a substantial factor in bringing about the harm." *Id*. While "a defendant's negligence may expose another to an increased risk of harm by placing him in a particular place at a given time, 'happenstance of place and time' may be too attenuated for liability to be imposed under the common law." *Id*. (quoting *Lear Sigler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)).

Given the lapse of time and distance involved in the instant case, we conclude as a matter of law that Munoz's accident did no more than furnish the condition which made Bethke's injuries possible. *See id*. Although there is an association between the two accidents, it is "beyond the limitations established by [Texas Supreme Court] precedents to contend that [Munoz's] conduct caused [Bethke's] injuries." *Id*. at 800. In this case, "the causal link between [Munoz's] conduct and [Bethke's] injury [is] too remote to be legally significant." *Id*.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice